Ranney, J.
The controversy in this case arises between the -execution and attaching creditors of one David Ferguson, and this writ is brought to reverse an order of distribution preferring the latter, made by the court of common pleas of Stark county, at its April term, 1853. It appears from the record that Ferguson was *429 sued as an absconding debtor, and his property attached at the suit, of Ryder, on the 2d day of March, 1852. The other defendants, eleven in number,'filed their claims under this attachment, and all obtained ^judgments, at the November term of that year, 'amounting in the aggregate to over $7,000. During the pendency of these proceedings, to wit, on the 1st day of June, 1852, the plaintiffs in error caused the property to be levied upon, subject to-the attachment, in virtue of three several writs of execution issued upon judgments rendered by the court of common jfioas of Erie county. On the second day of the same month, Ferguson appeared in open court, but, without any action of the court thereon, surrendered himself into the custody of the sheriff, and immediately thereafter, and on the same day, applied for a writ of habeas corpus, alleging that he was illegally detained; upon the hearing of which, he was discharged from imprisonment, and set at large. On the-day of his surrender, he filed pleas to two of the declarations then filed against him (whether while in actual custody or not, does not appear), and to the balance, as well as those afterward filed—or, at least, to the most of them—he pleaded at various times-before final judgment. Upon this state of facts, it is insisted by counsel for the plaintiffs that so soon as the defendant, Ferguson, surrendered himself into custody, and filed pleas, the proceeding-in rem commenced against him was changed to one in personam, and the operation of the attachment upon his property then ceased, and determined; and, as a legal consequence, it was then held exclusively by the executions that had been levied upon it. The solution of this question must depend upon the construction to boput upon section 9 of the act of January 17, 1824, “allowing and regulating writs of attachment” (Swan’s Stat. 91), which provides that it shall be competent for the defendant, at or before the said third term, to file special bail, or surrender himself in custody, or elect to have the property attached remain in custody, and may plead to any or all of the declarations which may be filed against, him; but if the said defendant shall not plead as aforesaid, the-court, at the said third term, shall proceed at the suit of all the-said plaintiffs, as in other cases of default, and the said defendant, or any other on his behalf, may appear and'introduce evidence before the court, or jury, as in other cases of default; and shall have the same right to appeal, move in arrest of judgment,, or set aside the proceedings for irregularity; and if the defendant *430 ■shall enter special bail, or surrender himself in custody, as aforesaid, the operation of such attachment upon the property and moneys of said defendant shall cease, in respect of the plaintiffs whose declarations may have been pleaded to in custody, or by reason of having filed special bail.” •
Although the language of this section is somewhat involved and obscure, yet, when viewed in connection with the proceedings then .authorized for commencing and prosecuting actions in personam, the object and purpose of the general assembly become very manifest. Such actions might then be commmenced by summons or capias, at the election of the creditor. If the latter course was taken, the defendant was obliged to give special bail, or suffer himself to be taken into custody; the object of each being to have his body forthcoming, .to answer final process of execution against it.
Now, it was never intended to deprive the creditor in attachment •of his security upon the property of the debtor, by his barely effecting an appearance, such as would have been obtained by a summons, or by his placing the plaintiff in a condition to recover a judgment -in personam against him. Two objects were intended to be secured before the lion upon the property could be affected; first, the debtor must give the creditor the higher security afforded by the capias, by putting his person in the place of his property; and second, he must expressly waive all objections to the regularity of the previous proceedings, by pleading to the declaration. Without this they were all loft open to him, and the proceedings were treated, as we know, with great strictness. As conditions precedent to his right to plead, he must do one of three things : 1. Elect to have his ■property remain in custody; 2. Give special bail; or 3. Surrender himself in custody. If he desired his property released from attachment, he must plead, after, and “ by reason of having *filed ■sj»ecial bail,” or while in actual custody himself. These are the positive terms of the statute, and we have no power to dispense with them. The two facts must co-exist—actual custody and the plea must concur to work the effect. But, as. subsequent statutes, and, finally, a constitutional provision, have abolished imprisonment for debt, unless in eases of fraud; while it is admitted the debtor must .still surrender himself in custody, to procure the release of his property, and this provision of the law is said to be still in force, it is ■ claimed that he need not plead, or remain in custody, as the creditor has every security left that existing laws would have afforded *431 him, if the debtor had resided or remained within the jurisdiction, and subject to personal service. Is this so in all cases ? Imprisonment for debt is still allowed in cases of fraud. How can it be said that these creditors might not have been justified in issuing process for the body of the defendant in the first instance, and after judgment, like final process ? But it is said, if the case is one of fraud, the fact may be shown, and the defendant detained in custody. If .so, does it not show the absolute necessity, as matter of substance, of requiring him to plead while in custody ? Until the plea is filed, the creditor has a right to know that his security upon the property is not affected; and until then, he has no interest in keeping the debtor in custody. To discharge first the person, because fraud was not shown, when no one had an interest to show it, and then allow the plea to discharge the property, would, indeed, be sharp practice. At the time these proceedings were had, no part of the law had been •expressly repealed. If any part of it had become inoperative, it was because it had become inconsistent with later statutes or the constitution. If the part allowing the debtor to be detained until final judgment was thus impliedly repealed, it might be thought that all authority to take him into custody at all, was gone; and that while the debtor was thus legally disabled to give the creditor the security which the law contemplated, in the place of his property, the farce of going momentarily into custody and coming out again, ^without benefit to the creditor or injury to the debtor, was itself legally inoperative. These considerations might present questions of difficult solution, but their determination is unnecessary in this case; and they are of no importance in the future, as the whole law is now repealed.
It is not doubted that the property was legally held by the attachment up to the 2d of June, 1852. If, before that time, that part of the law which allowed the debtor to obtain its discharge, by surrendering himself into custody, had been repealed, the attempt to do so was of course a nullity ; if it had not been repealed, it is equally of course that its provisions must be regarded to have that effect. The defendant did not comply with these provisions. He Went voluntarily into custody, and upon his own application was immediately discharged; without pleading perhaps to any, certainly not to all, the declarations filed against him. The consequence was, the property was still held by the attachment, and while it was so held, other creditors had a right *432 to file their claims under it, at any time, at or before the thirds term. It is of no importance to consider what effect the pleas filed on the 2d of June might have had upon the claims of the creditors whose declarations were thus- responded to; since the balance of those filed under the attachment were more than sufficient to absorb the avails of the property.
It is also objected that a third default was taken after pleas were filed and the several cases at issue. It is at least doubtful whether these plaintiffs could be heard to insist upon mere errors-in the proceedings against Ferguson. If the court retained its jurisdiction over the property, it would be clearly sufficient to-authorize the order of distribution finally made. But whether-they may or not rely upon such errors, the objection is not tenable, even if made by Ferguson himself, as he was in no way injured by the unnecessary and irregular entry of this default. No-judgment was rendered upon it, but it apjiears that the issues. *were, with his consent, submitted to the court, and severally found for the plaintiffs.
The judgment must be affirmed.